UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DR. RICHARD CHENEY<br>3001 White Oak Lane<br>Lima, Ohio 45805<br><br>      Plaintiff<br><br>    vs.<br><br>JOHN HANCOCK LIFE INSURANCE<br>COMPANY (U.S.A), as successor in interest to<br>John Hancock Life Insurance Company (f.k.a John<br>Hancock Mutual Life Insurance Company)<br>601 Congress Street<br>Boston, Massachusetts 02110-2805<br><br>and<br><br>UNUM GROUP<br>1 Fountain Square<br>Chattanooga, Tennessee 37402<br><br>      Defendants | CASE NO.:<br><br><br><br>JUDGE:<br><br><br><br>**COMPLAINT**<br>(With Jury Demand) |

## PARTIES

1.    Plaintiff Dr. Richard Cheney ("Dr. Cheney") is a citizen of Ohio.

2.    Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock") is a stock life insurance company that was incorporated in Maine in 1955 and re-domesticated under the laws of Michigan in 1992. It is the successor in interest of John Hancock Life Insurance Company, which was formerly known as John Hancock Mutual Life Insurance Company. John Hancock's principal place of business is Massachusetts, and it is licensed to do business in Ohio. John Hancock does business in this judicial district.

3.    Defendant Unum Group ("Unum") is an insurance company authorized to conduct business in the State of Ohio. Unum is a Delaware corporation, with its principal place of business in Maine. Unum does business in this judicial district.

## JURISDICTION

4. Dr. Cheney brings this action under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

## VENUE

5. Venue is proper in this district under 28 U.S.C. § 1391 (b).

## GENERAL ALLEGATIONS
### The Insurance Policies

6. John Hancock issued two disability insurance policies to Dr. Cheney.

7. In December 1984, John Hancock issued to Dr. Cheney the first disability insurance policy, number H009692452. To the best of our knowledge, the 1984 Policy is attached as Exhibit 1.

8. In June 1987, John Hancock issued to Dr. Cheney the second disability insurance policy, number H009722897. To the best of our knowledge, the 1987 Policy is attached as Exhibit 2.

9. Dr. Cheney fulfilled the obligations required of him under both insurance policies, including paying the premiums for nearly thirty years.

10. Both policies defined Total Disability as follows:

    **"Total disability"** means only an incapacity which meets all of the following standards:

    - It begins while this policy is in force.
    - It's due to injury or sickness.
    - It requires the regular care of a physician.
    - It prevents you from performing the material duties of your regular occupation.

11. Both policies provided—albeit with slightly different language—for lifetime benefits for a disability that begins before the insured's 60th birthday and is continuously payable to the insured's 65th birthday.

12. Dr. Cheney was an optometrist. He had three material duties: eye examinations, refractions, and diagnosis and treatment of glaucoma.

13. In the 1990s, Dr. Cheney began to develop bilateral osteoarthritis in both shoulders.

14. In the 1990's, Dr. Cheney's arthritis progressed to the point where it prevented him from diagnosing and treating glaucoma. Thereafter, his material duties were eye examinations and refractions.

15. By 2003, Dr. Cheney's arthritis prevented him from fully performing, in a customary and usual manner without undue pain or hardship, his remaining material duties, and he contacted John Hancock to see if it would provide him vocational assistance so he could keep working. John Hancock hired a company to perform a vocational assessment, which concluded that:

- Dr. Cheney had cut back on his schedule due to pain in both his shoulders, with the right being worse than the left.

- Dr. Cheney's assistant has been performing many of the tests that Dr. Cheney should be performing because Dr. Cheney cannot hold his arm in a flexed position for an extended period of time.

- "Even though the client [Dr. Cheney] is able to perform the motions with both arms, the client is unable to sustain the hold. The client is presenting with a high risk for further progression since he is pressing past the limitations of his shoulder mobility."

16. Dr. Cheney made certain accommodations in how he performed his material duties and kept working.

**The Insurance Claims**

17. By 2009, Dr. Cheney's condition had progressively worsened. He realized that it was necessary for him to sell his practice, and, since he still needed a source of income, he filed a disability claim with John Hancock, which assigned the claim handling aspects of the claim to Unum.

18. Rather than directly addressing Dr. Cheney's disability claim, Unum sent him a check so he could purchase yet another piece of equipment that Unum thought would allow him to continue working. Dr. Cheney returned the check and asked Unum to address his disability claim.

3

19. As part of his disability claim, Dr. Cheney submitted a report from his treating physician, Dr. Thomas Kovack, who noted: "I'm not sure how he has been functioning up to this point considering his shoulder pain and limited range of motion."

20. Unum embarked on a long and tedious investigation. It obtained medical records, tax returns, patient calendars, and conducted another ergonomic evaluation. Dr. Cheney kept working out of economic necessity.

21. In 2010, Unum sent Dr. Cheney two checks for what it termed his residual disability in 2008 and 2009. Dr. Cheney thought he had applied for total disability, and pressed Unum for a decision on that aspect of the claim. He called Unum numerous times, told Unum that he could not perform his job in a customary and usual manner without undue pain or hardship, told Unum he wanted to sell his practice, told Unum he needed a decision on his total disability claim, and questioned Unum on whether the benefits he was receiving were going to continue for the rest of his life. He was repeatedly told that they would.

22. On April 6, 2011, Dr. Cheney called Unum to ask for an update on his claim since it seemed like it was taking an inordinate amount of time for Unum to approve the claim for total disability. In this call, Dr. Cheney again explained to Unum that he was still working out of economic necessity, and that as soon as Unum approved his total disability claim he would sell his practice. Unum responded by sending Dr. Cheney what it termed an Initial Claim Form and Attending Physician's Statement to be completed and returned. For some reason, Unum started the claim process all over.

23. Dr. Cheney completed the paperwork and returned it to Unum. He stated that "Any task above chest height causes pain and I can only tolerate a few seconds." Also, that "My wife and staff help me with many activities of dressing and other normal daily routines." Also, that "Some testing is impossible to perform and almost all others are very painful with limited ROM."

24. Despite notice that Dr. Cheney was still working, Unum never told Dr. Cheney that it would never consider him to be totally disabled if he continued working. By no later than April

4

2011—and probably much earlier—Dr. Cheney met the Total Disability definition of both policies because his arthritis prevented him from reasonably and properly performing his material duties as an optometrist without undue pain or hardship.

25. Meanwhile, the clock was ticking since Dr. Cheney's 60th birthday was October 16, 2011. Recall that the policies paid lifetime benefits if Dr. Cheney was totally disabled before his 60th birthday and received benefits continuously until his 65th birthday. Otherwise, benefits stopped at age 65. Given Dr. Cheney's life expectancy, about 20 years of disability benefits hung in the balance.

26. Unum continued to stall the claim. As of Dr. Cheney's 60th birthday, Unum had still not made a decision on his claims for total disability. Dr. Cheney continued working until and even after his 60th birthday out of economic necessity because Unum refused to make a decision on his claims.

27. Finally, in the fall of 2012, with still no decision from Unum on his claims for total disability, Dr. Cheney sold his practice. During this time, Unum continued to pay residual disability benefits to Dr. Cheney, but never made a decision on what he had been asking for all along—his claims for total disability.

28. On January 1, 2013, 14 months after Dr. Cheney's 60th birthday, Unum finally agreed that he was totally disabled. His condition on this date was substantially the same as it had been prior to his 60th birthday. He eventually had right shoulder surgery in November 2013 and left shoulder surgery in May 2015.

### Unum's Assurances about Benefits

29. On June 27, 2013, Unum—apparently recognizing that Dr. Cheney's total disability did, in fact, commence before his 60th birthday—sent a letter to Dr. Cheney assuring Dr. Cheney that he would receive lifetime disability benefits.

> "We have determined your total disability is due to a sickness and your benefit period is for your lifetime under both the above named policies."

A copy of the letter is attached as Exhibit 3.

30. In January 2014, Unum reassured Dr. Cheney of his eligibility for lifetime disability benefits by phone.

> "Confirmed with the insured that as long as he continues to meet the provisions of the policies that his benefit period on the IDI claims are for Lifetime."

A copy of Unum's notes from that conversation is attached as Exhibit 4.

31. In April 2015, Unum twice reassured Dr. Cheney of his eligibility for lifetime disability benefits. A copy of these letters is attached as Exhibit 5 and 6. For example, Exhibit 6 stated:

> "Benefits are payable under claim #s 4709692452002 and 4709722897002 to Lifetime as long as you remain totally disabled due to sickness and continue to meet the requirements of the policy."

32. By letter dated October 7, 2016, Unum agreed to pay Dr. Cheney's total disability claims to age 65, but denied Dr. Cheney's claim for lifetime total disability. The denial letter is attached as Exhibit 7 and summarizes Unum's position:

> "Both policies provide Total Disability and Residual Disability benefits to age 65 (October 16, 2016). The policies also contain a Lifetime provision, however, in order to be eligible for Lifetime benefits Total Disability benefits must be payable before age 60 (and continuously to age 65). Based on a review of the file, the onset of your claim was April 1, 2008 (age 56) due to bilateral shoulder arthritis. You continued working until January 2013 when you closed your business. We have administered your claim under the Total Disability provision as of January 1, 2013 (age 61) to the present. As you continued working beyond your 60th birthday and Total Disability did not start prior to age 60, you are not eligible for Lifetime benefits."

33. Until receiving the denial letter, Dr. Cheney had no knowledge that Unum would deny his claims or that Unum's assurances about lifetime benefits were false.

34. Dr. Cheney would have stopped working immediately had Unum ever informed him that Unum would deny his lifetime disability claims on this basis.

35. Unum's stated position is incorrect in that it misrepresents both the policy language and the law. There is no requirement in the policy that, in order to be considered Totally Disabled, the insured must completely stop working. Rather, the test, as set forth in the policy language and as developed through the case law, is whether the insured can perform the substantial and material duties of his occupation in a customary and usual manner without undue pain or hardship. By this measure,

6

Dr. Cheney was totally disabled before his 60th birthday, remained totally disabled through his 65th birthday, and is thus entitled to lifetime disability benefits under both policies.

## COUNT ONE
### (Breach of Contract—John Hancock)

36. Dr. Cheney restates the above allegations.

37. Dr. Cheney had two disability contracts with John Hancock.

38. At all relevant times, Dr. Cheney fulfilled his duties under the contracts.

39. John Hancock breached the insurance contracts.

40. As a direct and proximate result of John Hancock's breach of the contracts, Dr. Cheney has been denied total disability benefits and the lifetime benefits due under the insurance contract in an amount in excess of $75,000, the exact amount to be determined at trial, but in the approximate amount of $1,680,000 (20 years x $7,000 per month not including cost of living increases).

41. As a further direct and proximate result of John Hancock's breach of the insurance contracts, Dr. Cheney has suffered other reasonably contemplated damages.

## COUNT TWO
### (Intentional Interference With Contract—Unum)

42. Dr. Cheney restates the above allegations.

43. Dr. Cheney and John Hancock had two contracts.

44. Unum knew about the contracts between Dr. Cheney and John Hancock.

45. Unum intentionally interfered with the contracts between Dr. Cheney and John Hancock, and Unum's actions resulted in John Hancock breaching both contracts.

46. Unum's actions were motivated by financial gain.

47. As a result of Unum's actions, Dr. Cheney was damaged.

48. Unum's actions were intentional and malicious, thus entitling Dr. Cheney to both compensatory and punitive damages under Ohio law.

49. Dr. Cheney prays for judgment against Unum in an amount in excess of $75,000, the exact amount to be determined at trial, plus interest and attorney fees as allowed by law.

## COUNT THREE
### (Lack of Good Faith—John Hancock and Unum)

50. Dr. Cheney restates the above allegations.

51. John Hancock and Unum, through their agents, representatives, and investigators, acted unreasonably, without reasonable justification, fraudulently, intentionally, recklessly, maliciously, and not in good faith.

52. John Hancock and Unum, through their agents, representatives, and investigators, failed to adequately investigate the claim and made the claim decision without reasonable justification.

53. Among other actions, John Hancock and Unum:

- Unreasonably delayed reaching a decision on Dr. Cheney's claim;
- Lacked reasonable justification for concluding that Dr. Cheney was not totally disabled before his 60th birthday;
- Misrepresented the terms of the insurance contracts for their own benefit;
- Misrepresented to Dr. Cheney that he would receive lifetime disability benefits;
- Failed to disclose to Dr. Cheney that continued working would defeat his claims;
- Failed to provide honest answers to Dr. Cheney's questions about his claims;
- Denied his claim for lifetime benefits by imposing a requirement that does not exist in the policy, thereby misrepresenting the terms of the policy.

54. The actions and omissions of John Hancock and Unum demonstrate actual malice, aggravated or egregious fraud, oppression, or insult and defendants, as principal or master of their agents, authorized, participated in, and ratified the actions or omissions of their agents in this regard.

55. As a direct and proximate result of the defendants' lack of good faith, Dr. Cheney has suffered emotional distress and anxiety, inconvenience, economic harm, and has incurred litigation expenses and attorney's fees.

56. Dr. Cheney prays for judgment on this count against both John Hancock and Unum in an amount in excess of $75,000 in compensatory damages and an amount in excess of $75,000 in punitive damages, the exact amount to be determined by the trier of fact, plus interest, costs, and attorney's fees as allowed by law.

## COUNT FOUR
### (Fraudulent Concealment—John Hancock and Unum)

57. Cheney reinstates the above allegations.

58. John Hancock and Unum owed a duty of disclosure to Dr. Cheney.

59. John Hancock and Unum, through their agents, representatives, and investigators, knowingly concealed the material fact from Dr. Cheney that continued working would defeat his total disability claims.

60. John Hancock and Unum intended to mislead Dr. Cheney into relying upon their failure to disclose this information so that Dr. Cheney would continue working.

61. Dr. Cheney, in justifiable reliance on the defendants' failure to disclose their position that continued working would defeat his disability claims, continued working out of economic necessity.

62. As a direct and proximate result of the defendants' failure to disclose this information, Dr. Cheney has been denied the full policy benefits due under the insurance contracts.

63. As a further direct and proximate result of the defendants' failure to disclose this information, Dr. Cheney has suffered emotional distress and anxiety, inconvenience, economic harm, and has incurred litigation expenses and attorney's fees.

64. Dr. Cheney prays for judgment on this count against both John Hancock and Unum in an amount in excess of $75,000 in compensatory damages and an amount in excess of $75,000 in punitive damages, the exact amount to be determined by the trier of fact, plus interest, costs, and attorney's fees as allowed by law.

## COUNT FIVE
### (Fraudulent Misrepresentation—John Hancock and Unum)

65. Dr. Cheney restates the above allegations.

66. John Hancock and Unum, through their agents, representatives, and investigators, represented to Dr. Cheney the material fact that Dr. Cheney would receive lifetime disability benefits.

67. John Hancock and Unum consistently made these representations to Dr. Cheney in response to Dr. Cheney's questions about the status of his disability claims.

68. The defendants falsely made these representations to Dr. Cheney with knowledge of their falsity, or with utter disregard and recklessness as to the truth or falsity of the representations.

69. The defendants made such representations to Dr. Cheney to induce Dr. Cheney's reliance upon them.

70. Dr. Cheney justifiably relied on the defendants' representations.

71. As a direct and proximate result of the defendants' fraudulent misrepresentations, Dr. Cheney has been denied the full policy benefits due him under the contracts.

72. As a further direct and proximate result of the defendants' failure to disclose this information, Dr. Cheney has suffered emotional distress and anxiety, inconvenience, economic harm, and has incurred litigation expenses and attorney's fees.

73. Dr. Cheney prays for judgment on this count in an amount in excess of $75,000 in compensatory damages and an amount in excess of $75,000 in punitive damages, the exact amount to be determined by the trier of fact, plus interest, costs, and attorney's fees as allowed by law.

## COUNT SIX
### (Negligent Misrepresentation—John Hancock and Unum)

74. Dr. Cheney restates the above allegations.

75. John Hancock and Unum, through their agents, representatives, and investigators, supplied false information to Dr. Cheney during the insurance claim process.

76. John Hancock and Unum failed to exercise reasonable care in communicating information to Dr. Cheney about his eligibility for lifetime total disability benefits.

77. Dr. Cheney justifiably relied on the false information the defendants provided.

78. As a direct and proximate result of the defendants' negligent misrepresentations, Dr. Cheney has been denied the full policy benefits due under the contracts.

79. As a further direct and proximate result of the defendants' negligent misrepresentations, Dr. Cheney has suffered emotional distress and anxiety, inconvenience, economic harm, and has incurred litigation expenses and attorney's fees.

80. Dr. Cheney prays for judgment on this count against both John Hancock and Unum in an amount in excess of $75,000 in compensatory damages and an amount in excess of $75,000 in punitive damages, the exact amount to be determined by the trier of fact, plus interest, costs, and attorney's fees as allowed by law.

## COUNT SEVEN
### (Reasonable Expectations—John Hancock and Unum)

81. Dr. Cheney, at the time he purchased the policies, reasonably expected the policies to provide him coverage if he became totally disabled.

82. John Hancock and Unum represented to Dr. Cheney that he was eligible for lifetime total disability benefits under his policies with knowledge that Dr. Cheney was still working.

83. Dr. Cheney reasonably believed that he was covered under both policies due to the defendants' representations about his coverage under the policies.

84. Dr. Cheney prays for the Court to exercise its equitable jurisdiction and refuse to enforce the insurance contract as written and, instead, to enforce the contracts in a manner consistent with Dr. Cheney's reasonable expectations in order to avoid an unconscionable result.

## COUNT EIGHT
### (Equitable Estoppel—John Hancock and Unum)

85. John Hancock and Unum made representations of material fact to Dr. Cheney concerning Dr. Cheney's eligibility for lifetime disability benefits.

86. Dr. Cheney reasonably relied, in good faith, upon the defendants' factual representations about Dr. Cheney's eligibility for lifetime disability benefits.

87. The defendants changed their position on Dr. Cheney's eligibility for lifetime disability benefits.

88. As a direct and proximate result of the defendants' change of position and Dr. Cheney's reliance on the defendants' representations, Dr. Cheney has been denied the full policy benefits due under the contract.

89. As a further direct and proximate result of the defendants' change of position and Dr. Cheney's reliance on the defendants' representations, Dr. Cheney has suffered emotional distress and anxiety, inconvenience, economic harm, and has incurred litigation expenses and attorney's fees.

90. John Hancock and Unum should be estopped from asserting that Dr. Cheney is not eligible for lifetime disability benefits.

## COUNT NINE
### (Declaratory Relief—John Hancock and Unum)

91. Dr. Cheney has two contracts with John Hancock.

92. The parties have a disagreement over the proper construction of the contracts.

93. Pursuant to R.C. 2721.03 et seq. and Federal Civil Rule 57, Dr. Cheney is entitled to a declaratory judgment from this Court construing the policy terms and conditions and the respective rights and responsibilities of the parties under the policies.

94. Dr. Cheney asks this Court for any declaratory relief the Court deems proper, in law or in equity, including a declaration that Dr. Cheney was totally disabled under both policies prior to his 60th birthday, that he was entitled to total disability benefits from at least his 60th birthday, that such total disability benefits properly should have been paid continuously until his 65th birthday, and that he is entitled to lifetime disability payments under both policies.

95. Dr. Cheney further prays for any further relief the Court deems proper including interest, costs, and attorney fees as allowed by law.

WHEREFORE, Dr. Cheney prays for judgment against John Hancock and Unum as set forth above, plus an award of compensatory and punitive damages in excess of $75,000, plus interest, costs, and attorney fees as allowed by law, and such other relief as the Court, in the exercise of its equitable jurisdiction, deems proper.

Respectfully submitted,

*/s/Robert P. Rutter*
ROBERT P. RUTTER (0021907)
Rutter & Russin, LLC
Attorney for Plaintiff Dr. Richard Cheney
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Ohio 44131
(216) 642-1425
brutter@ohioinsurancelawyer.com

## JURY DEMAND

Dr. Cheney hereby requests, pursuant to Federal Rule of Civil Procedure 38(b), a trial by jury of the issues of the within lawsuit.

*/s/ Robert P. Rutter*
ROBERT P. RUTTER