UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard Cheney,                                         Case No. 3:18-cv-448

              Plaintiff

       v.                                               MEMORANDUM OPINION
                                                           AND ORDER

John Hancock Life Insurance
Company (U.S.A.), et al.,

              Defendants


I.       **INTRODUCTION AND BACKGROUND**

On December 15, 1984, Defendant John Hancock Life Insurance Company (U.S.A.) issued

a Disability Income Policy to Plaintiff Richard Cheney.  (Doc. No. 48-1).  Defendant issued Plaintiff

a second Disability Income Policy on June 1, 1987.  (Doc. No. 48-2).  Each of these Policies

provided lifetime monthly income benefits should Plaintiff become "totally disabled" before his

60th birthday and continue to be through his 65th birthday.  (Doc. No. 48-1 at 3; Doc. No. 48-2 at

3).  This action stems from a dispute regarding whether Plaintiff was "totally disabled" prior to his

60th birthday.

While Plaintiff asserted multiple tort and contract claims related to the dispute, he does not

seek summary judgment of any claim at this time.  Instead, he seeks "declaratory relief and partial

summary judgment on the issue of policy construction."  (Doc. No. 41).  Specifically, he seeks a

declaration as to the construction particular words within the definition of "total disability" in his

Policies.  Defendant filed an opposition brief to Plaintiff's proposed construction, (Doc. No. 53), and Plaintiff filed a reply brief in support of his position.  (Doc. No. 55).

## II.  STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor.  *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).  A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## III.  DISCUSSION

When interpreting an insurance contract, the court must "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003).  "[W]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."  *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380 (Ohio 1988).  But "that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy."  *Morfoot v. Stake*, 190 N.E.2d 573, 574 (Ohio 1963).  "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument."  *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978).

Both the 1984 and 1987 Policies define "total disability" as "an incapacity which meets all of the following standards:

> • It begins while this policy is in force.
> • It's due to injury or sickness.
> • It requires the regular care of a physician.
> • It prevents you from performing the material duties of your regular occupation."

(Doc. No. 48-1 at 5; Doc. No. 48-2 at 7).  The parties dispute the meaning of the phrase "prevents you from performing the material duties of your regular occupation."

In Plaintiff's motion, he alleges the terms "prevent" and "performing" are ambiguous and urges me to define them in the following manner:

> **Prevent** means: To hinder or impede something from occurring; that is, to make its occurrence more difficult.
> **Performing** the material duties of one's occupation means to perform them in the proper, customary, or established manner, with the same quality and in the same quantity as before the disability arose, without undue pain or the risk of exacerbating the insured's physical condition.

(Doc. No. 41 at 18).  Characterizing these definitions as "strained" and "unnatural," Defendant asserts the phrase "prevents … from performing" is not ambiguous but should be given its "plain and ordinary" meaning of "stops from carrying out."   (Doc. No. 53 at 14).  Defendant also contends Plaintiff's proposed conditional language regarding the manner and frequency in which "the material duties" may be performed should also be rejected.

The two operative phrases at issue here are "prevent you from performing" and "the material duties of your occupation."  I address "material duties" first.

## A.     The Material Duties of Your Occupation

This is not the first time a phrase similar to "performing the material duties of your occupation" has come before the court for review.  *See Leonor v. Provident Life & Accident Co.*, 790

F.3d 682, 687 (6th Cir. 2015).[1]  In *Leonor*, the insurance contract defined "total disability" as being

"unable to perform the important duties of Your Occupation" due to an injury or sickness.[2]  *Id.* at

684.  The court held this phrase was "ambiguous as to whether it refers to all of the important duties

or most of them."  *Id.* at 687.

In reasoning, the *Leonor* court first discussed how "[t]he definite plural may, in context, refer

to the objects as a whole, rather than to each of the objects."  *Id.* at 688.  The court then described

"[t]wo features of the policies' language [that] lead to the conclusion that the phrase," "'the

important duties of Your Occupation' can in context plausibly be read to mean 'the important duties

(as a whole) of Your Occupation.'":

> First, the set of important duties of Leonor's occupation was not precisely defined
> for either party when the policies were issued, suggesting that the policies did not
> focus on each and every important duty when it was not even clear what those duties
> were.  Second, nothing in the policies suggests that the parties anticipated that being
> able to perform some small percentage of Leonor's important duties would make
> much of a difference for Leonor in the event he was injured.

*Id.*

The same applies here.  Like the policies at issue in *Leonor*, neither the 1984 nor the 1987

Policy defines what the "material duties" of Plaintiff's occupation are.  These Policies also fail to

provide "clear standards or guidelines for determining which duties were [material] in the event of a

disagreement."  *Id.* at 689.  Because the Policies fail to define what "the material duties" are or the

scope of the term, it "is at least plausibly a general statement about most of the important duties

rather than an absolute statement about all of them."  *Id.*

---

[1] A Michigan insurance contract was at issue in *Leonor*.  But Michigan applies the same rule as Ohio
– an ambiguity in an insurance contract should be construed in favor of the insured.  *Leonor*, 790
F.3d at 687.  In applying this rule, *Leonor* stated, "for Leonor to prevail, his interpretation must be
reasonable, but it need not be superior to the insurers'."  *Id.*  The same is true for Plaintiff here.
[2] One of the policies at issue replaced the term "important" with "material and substantial," but the
parties in *Leonor* did not argue this changed the application of the policy.  *Leonor*, 790 F.3d 687 n.3.

The purpose of the Policies is also effectuated by interpreting "the material duties" to include less than "all of the material duties" all of the time.  As stated in *Leonor*, "the likely purpose for using 'You are unable to perform the important duties of Your Occupation' as a condition for total disability coverage—providing coverage in the event the insured must quit his profession entirely."  *Id.*  But an insured may be required to quit his profession even if he can still perform material duties of the profession.

An insured could be forced to quit his profession due to qualitative or quantitative reductions in performance, for example.  *McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 588 (7th Cir. 1998).  A qualitative reduction in performance results in total disability when the incapacity physically prevents the insured from performing specific duties essential to the profession all of the time.  *Id.*

For example, in *Leonor*, the insured was considered "unable to perform the important duties of [his] occupation" because "[h]is injury prevented him from performing important duties that had occupied approximately two-thirds of his time."  790 F.3d at 691-92.  A quantitative reduction in performance occurs when "the injury or sickness would not physically prevent an employee from performing any given task, but the injury instead renders the person unable to perform enough of the tasks or to perform for a long enough period to continue working at his regular occupation."  *McFarland*, 149 F.3d at 588.

In either case, the insured may be able to perform material duties of his occupation and still be unable to function in that profession.  Therefore, construing the phrase "the material duties" to refer to the material duties as a whole – contemplating both qualitative and quantitative reductions – is not only reasonable, but also effectuates the purpose of the phrase and the intent of the parties.

Defendant disputes this conclusion, arguing the residual rider would be given no meaning if "the material duties" does not include all material duties all of the time.  (Doc. No. 53 at 17-18).

The insurer in *Leonor* made a similar argument, asserting "the policies' use of 'residual disability' as a distinct category characterized by the insured's inability to perform 'one or more' important duty suggests that 'total disability' must refer exclusively to the inability to perform all important duties." 790 F.3d at 691.  But the court rejected this argument, explaining,

> the presence of the residual-disability category only means that a totally disabled individual must be unable to perform most, as opposed to some, of the important duties of her profession.  Residual disability and total disability are two categories of disability occupying distinct sections of a "continuum of disability."  [*Giddens v. Equitable Life Assurance Soc'y of the U.S.,* 445 F.3d 1286, 1300 (11th Cir. 2006)].  Because the two categories must be mutually exclusive for the policies to make sense, there must be some dividing line beyond which any additional degree of disability makes an otherwise residually disabled person totally disabled.  *Id.* at 1301.  But the presence of the residual-disability category in itself does not compel any particular conclusion about where the line should be drawn.  *Id.*

*Leonor*, 790 F.3d at 691.

To determine where to draw the line between residual and total disability, the *Leonor* court looked to the policies' definition of "residual disability."  *Id.* at 691.  One of the policies stated the insured qualified for "residual disability" benefits if, due to an incapacity: "(1) You are unable to perform one or more of the important duties of Your Occupation; or (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them."  *Id.* at 684.

Under the other, the insured was "residual disability" if, due to an incapacity: "You are unable to perform one or more of the material and substantial duties of Your occupation; or You are unable to perform them for as long as normally required to perform them."  *Id.* at 684 n.1.  The court did not discuss the quantitative clause of these definitions, but instead focused on the common "one or more" qualitative clause.  *Id.* at 691.  The court found this clause "provide[d] some help to the insurers, but not enough[,]" as "[t]he bar for residual disability [was] low."  *Id.*  To "leave significant space on the disability continuum for non-total, residual disability," the court concluded

6

that the dividing line between residual and total disability could "comfortably" be drawn at "most important duties."  *Id.*

Following *Leonor*, I find the Policies' definition of "residual disability" does not become meaningless, but controls where to draw the dividing line between "residual disability" and "total disability."  Although Plaintiff states only the 1987 definition of "residual disability," (Doc. No. 41 at 4-5; Doc. No. 55 at 6-7), each of his Policies define "residual disability" in a different manner.  (Doc. No. 48-1 at 18-19; Doc. No. 48-2 at 23).  Therefore, they must be analyzed separately.

Contrary to Plaintiff's assertion, the 1984 "residual disability" definition does "utilize the insured's performance of material duties to determine residual disability."  (Doc. No. 55 at 6-7).  That is, under the 1984 Policy,

> "Residual disability" means only an incapacity which meets all of the following standards:
>
> • It begins while this policy is in force
> • It's due to injury or sickness.
> • It requires the regular care of a physician.
> • It prevents you from performing one or more of the material duties of your regular occupation or from performing all such material duties on a full-time basis.
>
> We will regard you as residually disabled only if (I) you are not totally disabled, (II) you are engaged in your regular occupation, and (III) your Current Monthly Earnings are not more than 75 percent of your Prior Monthly Earnings.

(Doc. No. 48-1 at 18-19).

Like the policies in *Leonor*, this definition contemplates a quantitative and qualitative reduction of force.  The qualitative clause is sufficiently similar to *Leonor* to be reasonably interpreted in the same manner, drawing the line between residual and total disability as an incapacity that prevents the insured from performing "most" material duties. [3]

---

[3] This conclusion is bolstered by the Policy's use of "all such material duties" in the definition of "residual disability" but not "total disability."  If the drafter wished to use this language in the definition of "total disability," he no doubt could have.

The quantitative clause provides that an insured will be residually disabled if the incapacity prevents him "from performing all such material duties on a full-time basis."  While the Policy does not provide how much less than "a full-time basis" "all such material duties" must be performed to be considered "residually disabled," it does state the insured will be considered "residually disabled" if his "Current Monthly Earnings are not more than 75 percent of [his] Prior Monthly Earnings." Therefore, reading this definition together, a "residual disability" is an incapacity that "prevents [the insured] …from performing all such material duties" for such an amount of time that it reduces the insured's "Prior Monthly Earnings" by at least 25%.  That is, the bar for "residual disability" is a quantitative reduction in performance resulting in a 25% reduction in "Prior Monthly Earnings."

To avoid the category of "residual disability" becoming a nullity, as feared by Defendant, "all that is required … is that the dividing line between total disability and residual disability leave significant space on the disability continuum for non-total, residual disability."  *Leonor*, 790 F.3d at 691.  Taking guidance from *Leonor*, the dividing line could be drawn again at "most" – the incapacity "prevents you …from performing all such material duties" frequently enough that it causes a reduction in most of the insured "Prior Monthly Earnings."

A similar analysis applies to the 1987 Policy.  Unlike the 1984 Policy and the *Leonor* policies, the 1987 "residual disability" definition makes no mention of "material duties."  Instead, the 1987 Policy states,

> "Residual disability" means only an incapacity which meets all of the following standards:
>
> • It begins while this policy is in force
> • It's due to injury or sickness.
> • It requires the regular care of a physician.
> • It causes a loss of Monthly Earnings of 20% or more.
>
> We will regard you as residually disabled only if (i) you are not totally disabled, and (ii) you are engaged in your regular occupation.

(Doc. No. 48-2 at 23).  Therefore, the bar for "residual disability" is set at any reduction in performance – qualitative or quantitative – that "causes a loss of Monthly Earnings of 20% or more."[4]  (*Id.*).  This does not compel the dividing line between residual and total disability to be drawn at "all material duties" or causing a loss of "all" Monthly Earnings.  Instead, the line "comfortably" lies at a loss of "most" Monthly Earnings.

In sum, following the *Leonor* court, I conclude the phrase "the material duties of your occupation" is ambiguous.  Construing the language liberally in favor of the insured, neither Policy required Plaintiff's incapacity to prevent him from being able to perform all of "the material duties" of his profession all of the time to be considered "totally disabled."  The existence of the "residual disability" category also does not require this conclusion.  Instead, under the 1984 Policy, "total disability" reasonably could be interpreted to mean an incapacity that "prevents you from performing" "most" of the material duties of your occupation all of the time *or* all of the material duties frequently enough to cause a reduction of "most" of the insured's Prior Monthly Earnings. Under the 1987 Policy, "total disability" occurs when the insured's incapacity causes a qualitative or quantitative reduction in performance resulting in a loss of "most" of the insured's Monthly Earnings.

## B.    "Prevent You from Performing"

While the phrase "the material duties of your occupation" is ambiguous, "prevent you from performing" is not.

First, Plaintiff asserts "one of the accepted dictionary definitions" of the word "prevent" is to "hinder" or "impede" or "make more difficult."  (Doc. No. 55 at 2).  But not even Plaintiff cites

---

[4] Like the discussion of the 1984 Policy, the insured qualifies for residual disability benefits if he also meets the other criteria: he is not totally disabled and is still engaged in his occupation but suffers from an incapacity which "begins while th[e] policy is in force," is "due to injury or sickness," and "requires the regular care of a physician."  (Doc. No. 48-2 at 23).

any dictionary defining "prevent" as merely to "impede" or "make more difficult." Instead, Plaintiff creates a chain of connections in which he alleges that, because *Merriam-Webster* lists "hinder" as a synonym for "prevent" and lists "impede" as a synonym for "hinder," "impede" must be included within the definition of "prevent." That is not the case. Instead, the plain and ordinary meaning of "prevent" is to "stop" or "keep from happening."

Second, because Plaintiff's proposed definition of "performing" includes the word "perform," he apparently agrees the word has a common meaning and is not ambiguous. But Plaintiff contends the Policies should be interpreted to include language regarding *how* "the material duties" must be "perform[ed]." Namely, he contends the duties must be performed "in the proper, customary, or established manner, … without undue pain or the risk of exacerbating the insured's physical condition."[5]

Although Plaintiff cites the testimony of Jonathan P. Butler, UNUM Director of Claims, for his assertion that the manner of performance is considered in the evaluation of a "total disability" claim, (Doc. No. 51 at 18), neither the 1984 nor the 1987 Policy contain any conditional language regarding the manner of performance. Instead, both merely use the unambiguous word "performing." Because the term "performing" is not ambiguous, the plain meaning within the four corners of the contract must be given full effect. Therefore, I decline Plaintiff's offer to rewrite the Policies to include the proposed additional language about the manner of performance.

Taken together, I agree with Defendant and conclude the phrase "prevent … from performing" is not ambiguous and means "to stop from carrying out."

---

[5] As discussed above, "the material duties of your occupation" encompasses qualitative and quantitative elements. Therefore, additional discussion in this section related to Plaintiff's proposal regarding performance "with the same quality and in the same quantity as before the disability arose" is unnecessary.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for declaratory judgment is granted in part, and denied in part.  I agree with Plaintiff's argument that the phrase "prevents you from performing the material duties of your occupation" does not require that the insured's incapacity stop him performing all material duties of his occupation all of the time, as argued by Defendant.  But it does require that the insured's incapacity stop him from performing most of the material duties all of the time or all of the material duties with such frequency that results in a reduction of most of the insured's Monthly Income.  Therefore, I reject Plaintiff's argument that the incapacity need only impede his ability to perform his material duties and decline to adopt his proposed language regarding the manner of performance.


So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

11