UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard Cheney,                      Case No. 3:18-cv-448

        Plaintiff,

  v.                             MEMORANDUM OPINION
                                   AND ORDER

John Hancock Life Insurance
Company (U.S.A.), et al.,

        Defendants.

## I. INTRODUCTION

Before me is Plaintiff Richard Cheney's motion "to allow him to supplement the expert report of Robert Ranallo, a CPA who previously provided a report that forecasted the amount of benefits that Unum should have paid Dr. Cheney for his lifetime disability." (Doc. No. 68). Pursuant to my order, (Doc. No. 69), Defendants filed a brief in opposition to this motion, (Doc. No. 70), Plaintiff filed a brief in reply, (Doc. No. 71), and Defendants filed a sur-reply. (Doc. No. 72).

## II. DISCUSSION

John Hancock issued one Disability Income Policy to Plaintiff in 1984 and another in 1987. (Doc. Nos. 48-1 & 48-2). Under both policies, Plaintiff would receive lifetime Monthly Income Benefits if he became "totally disabled," as defined by the Policies, before his 60th birthday and was continuously "totally disabled" from his 60th birthday through his 65th. (Doc. No. 48-1 at 3; Doc. No. 48-2 at 3). Plaintiff contends he satisfied these conditions and, thus, claimed a right to lifetime

Monthly Income Benefits. But because Defendants concluded he was not "totally disabled" before his 60th birthday, Plaintiff's claim to lifetime Monthly Income Benefits was denied.

Following the denial of benefits, Plaintiff brought this action asserting tort, contract, and quasi-contract claims. (Doc. No. 1). Defendants have moved for summary judgment of all of Plaintiff's claims. (Doc. No. 48). Plaintiff did not move for summary judgment on any of his claims but did move for "declaratory relief and partial summary judgment on the issue of policy construction." (Doc. No. 41).

In his motion, Plaintiff sought a declaration as to the construction of particular words within the phrase "an incapacity [that] prevents you from performing the material duties of your regular occupation," found in both Policies' definitions of "Total Disability." (*Id.*). For the reasons stated in my previous opinion, (Doc. No. 59), I concluded this phrase must be construed to mean the Plaintiff's "incapacity: (1) stopped him from carrying out most of his material duties all of the time (qualitative); or (2) stopped him from carrying out all of his material duties with such frequency that it resulted in a loss of most of his Monthly Earnings (quantitative)." (Doc. No. 61 at 1).[1]

Because claims for which Defendants sought summary judgment were dependent on whether Plaintiff was "totally disabled," I deferred ruling on Defendants' motion and ordered the parties to submit supplemental memoranda in light of this definition. (Doc. No. 61). In this Order, I noted that because Plaintiff conceded that he continued to carry out the material duty of his occupation – performing comprehensive eye exams – after his 60th birthday, he could be considered "totally disabled" only if "most of his Monthly Earnings were reduced because his incapacity prevented him from performing a sufficient number of comprehensive eye exams." (Doc. No. 61 at

---

[1] In the Conclusion of the Memorandum Opinion and Order, I erred by stating "Monthly *Income*" rather than "Monthly *Earnings*." (Doc. No. 59 at 11). This clerical error has no bearing on the substance of my conclusion. Further, in my Order filed contemporaneously, I correctly stated "Monthly Earnings." Therefore, in the interest of readability, I quote that Order for the definition here, which is substantively the same as the conclusion of the Memorandum Opinion and Order.

2

1). Therefore, I directed the parties to cite in their supplemental memoranda "evidence within the 7,126-page claim file regarding Plaintiff's Monthly Earnings from which I [could] determine whether his incapacity caused the necessary reduction" in his Monthly Earnings. (Doc. No. 61 at 2).

Rather that submitting the supplemental memoranda, the parties attempted to settle this case. Following the unsuccessful attempt, the parties again sought to submit the supplemental memoranda but agreed additional tax returns were necessary to make the requisite showing. But after Plaintiff was unable to procure those returns from the IRS, Plaintiff filed a motion "to allow him to supplement the expert report of Robert Ranallo." (Doc. No. 68).

In this motion, Plaintiff states that he "know[s] what [he] earned, but what is missing is a projection of what he would have earned if he had not been disabled." (*Id.* at 2). Therefore, he seeks an expert opinion to make "projections of how much his earnings would have continued to increase if he had worked full time." (*Id.*). Defendants object to this request, arguing in part that this projected income is irrelevant. I agree.

As noted by Defendants, the reduction of Monthly Earning is a matter of contract interpretation. Therefore, the standard I stated previously applies:

> When interpreting an insurance contract, the court must "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). "[W]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380 (Ohio 1988). But "that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Morfoot v. Stake*, 190 N.E.2d 573, 574 (Ohio 1963). "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978).

(Doc. No. 59 at 2).

Plaintiff seemingly acknowledges this by articulating the standard and stating, "the court must adopt *any* reasonable interpretation of the policy that favors the insured." (Doc. No. 71 at 3-4)

3

(emphasis in original). But Plaintiff does not offer any "reasonable interpretation" of the Policies which would require consideration of projected income. Instead, he merely alleges "the policies do not address th[e] issue" of "*how* to calculate the loss of most income in order to determine if an insured is [totally disabled]." (Doc. No. 71 at 2). But that is not the case.

The loss in Monthly Earnings is calculated by subtracting the Current Monthly Earnings from the Prior Monthly Earnings. Both Policies provide the following definitions for the relevant terms:

> "Monthly Earnings" means any compensation earned during a one-month period for services performed in your regular occupation. This includes, but is not limited to, salaries, wages, commissions and fees. This doesn't include any form of unearned income, such as investment income or rental earnings. We'll deduct normal and customary business expenses, if any, before we determine your Monthly Earnings. However, we won't deduct any income taxes.
>
> …
>
> "Current Monthly Earnings" means your Monthly Earnings during each month of residual disability for which a claim is made under this policy.
>
> "Prior Monthly Earnings" means the greater of the following:
> • Your average Monthly Earnings for the most recent consecutive 12-month period throughout which you were neither totally nor residually disabled.
> • Your highest average Monthly Earnings for any consecutive 24-month period during the 60-month period immediately prior to your total or residual disability.

(See Doc. No. 48-1 at 5, 19; Doc. No. 48-2 at 7, 23).

The two Policies differ with respect to the "Prior Monthly Earnings" calculation in that only the 1987 Policy provides that, "[a]fter the first twelve months of a Disability Period, we will adjust your Prior Monthly Earnings in the manner stated in provision 4.1 of the policy." (Doc. No. 48-2 at 23). Provision 4.1 states, in relevant part:

> **Adjustment of Prior Monthly Earnings**
> (Not applicable until the first anniversary of each Disability Period)
>
> While monthly benefits are payable under this provision 4.1 during a Disability Period, we will annually adjust your Prior Monthly Earnings to reflect any changes in the CPI. The adjustment will be effective as of each Adjustment Date during such

4

>Disability Period. Each such adjustment will remain in effect only until the day before the next Adjustment Date. However, an adjustment can't be made until after publication of the average CPI necessary to compute the adjustment. If such CPI has not been published as of an Adjustment Date, we will continue to pay benefits based on the adjustment last in effect. When such average CPI is published and the proper adjustment, if any, is computed, the monthly benefit payment next following the date of such computation will reflect any such adjustment and will also be increased or decreased, as the case may be, by the amount of any underpayment or overpayment for the period subsequent to such Adjustment Date.
>
>Prior Monthly Earnings will be adjusted by multiplying your Prior Monthly Earnings at the beginning of the Disability Period by the Enhancement Factor as computed below.
>
>As of any Adjustment Date, the "Enhancement Factor" will be the number derived by dividing the average CPI for the full calendar year immediately before the Adjustment Date by the average CPI for the full calendar year immediately before the first day of the Disability Period. If such number is one or less, no adjustment will be made.

(Doc. No. 48-2 at 24-25).

In turn,

>"CPI" means the Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W). It is published by the Bureau of Labor Statistics of the United States Department of Labor. If the CPI-W is discontinued or if its method of computation is changed, we may use another nationally published index. An index comparable in scope and purpose to the CPI-W will be chosen. "CPI" will then mean the chosen index. Such index will be approved by the Insurance Department in the jurisdiction in which this Rider was issued.
>
>"Adjustment Date" means each anniversary of a Disability Period which begins while the Residual Rider is in force.

(Doc. No. 48-2 at 23).

While the 1987 Policy allows for a CPI adjustment, neither Policy contains language permitting consideration of what the insured *could have* earned if not for his incapacity. Instead, both "Current Monthly Earnings" and "Prior Monthly Earnings" incorporate the term "Monthly Earnings," which is limited to what the insured actually earned. Therefore, an expert opinion regarding Plaintiff's projected Monthly Earnings is not necessary.

5

Similar reasoning applies to Plaintiff's contention that an expert is needed to determine how to "treat[ ] items such as pension benefits, healthcare benefits, donations, entertainment expenses, non-cash business deductions such as depreciation, and life insurance benefits" when calculating Monthly Earnings. (Doc. No. 71 at 1). But whether these items are "treat[ed]" as factors to be accounted for in the Monthly Income calculation depends on whether they are "compensation earned … for services performed in [his] regular occupation," a "form of unearned income," or "normal and customary business expenses." (Doc. No. 48-1 at 5; Doc. No. 48-2 at 7). Because this is a matter of contract interpretation, an expert need not opine as to how these items should be treated.[2]

While Plaintiff may not use an expert to project his earnings or determine how items are treated for the Monthly Earnings calculation, he may retain an expert to calculate the loss in Monthly Earnings should he wish to do so. The scope of the expert report is limited to calculating the difference between his Current Monthly Earnings and Prior Monthly Earnings, as defined by the Policies, for the relevant period of time. This calculation will differ for the two Policies as only the 1987 Policy allows for a CPI adjustment.

---

[2] To the extent that Plaintiff contends the analyst treated the items differently when calculating Prior Monthly Earnings and Current Monthly Earnings, I agree that the items should be treated consistently for the two calculations. If they were not, the calculation should be performed again.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted in part and denied in part. (Doc. No. 68). Plaintiff may retain an expert to provide a supplemental report, but this report must be limited in scope, as discussed above. Should he choose to retain an expert, he shall notify the court of his intent to do so within one week of this order and propose a timeline for the completion of the report.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge